# Exhibit C

INTERGOVERNMENTAL AGREEMENT
among the
CITY OF CENTREVILLE,
the
METRO-EAST SANITARY DISTRICT,
the
STATE OF ILLINOIS/EMERGENCY MANAGEMENT AGENCY,
the
STATE OF ILLINOIS/DEPARTMENT OF NATURAL RESOURCES
and the
U. S. DEPARTMENT OF AGRICULTURE/NATURAL RESOURCES
CONSERVATION SERVICE
for the
EMERGENCY WORK AND MAINTENANCE
on
WPA DITCH AND CANAL NO. 1
(Reach D)

Contract Number 024

THIS AGREEMENT is made among the City of Centreville, hereinafter "**CENTREVILLE,**" the Metro-East Sanitary District, hereinafter "**DISTRICT,**" the State of Illinois/Illinois Emergency Management Agency, hereinafter "**IEMA,**" the State of Illinois/Department of Natural Resources, hereinafter "**DNR,**" and the U. S. Department of Agriculture/Natural Resources Conservation Service, hereinafter "**NRCS,**"

WITNESSETH:

WHEREAS, CENTREVILLE, DISTRICT, IEMA and DNR are entities organized and existing under the laws of the State of Illinois, having among their powers the authority to contract with one another to perform such undertakings as described herein; and

WHEREAS, CENTREVILLE, DISTRICT, IEMA, NRCS and DNR are desirous of performing emergency work on the WPA Ditch and Canal No. 1, this emergency work including the removal and disposal of disaster related siltation to a five-year frequency discharge capacity and stage, the removal and disposal of disaster related debris and snags, the removal and disposal of any woody growth associated with access required to do this work and any associated initial and potential future mitigation work required for wetlands, tree removal or other environmental impacts, such emergency work beginning on Canal No. 1 from approximately 200 feet downstream of Lake Drive upstream to WPA Ditch and on WPA Ditch from Canal No. 1 upstream to Glenwood Avenue, all referred to as Reach D, such emergency work hereinafter referred to as "**PROJECT,**" and

WHEREAS, IEMA will make available federal funds obtained from the Federal Emergency Management Agency (FEMA) sufficient to cover seventy-five percent of all eligible PROJECT costs and IEMA will provide an additional

twenty-five percent in state funds to cover the requirement for non-federal spending on eligible PROJECT costs.

**NOW THEREFORE**, for and in consideration of the benefits to be derived from the implementation of the PROJECT, the sufficiency of which is hereby acknowledged, the parties hereto agree to the following terms and conditions:

1. The recitals set forth above are incorporated herein by reference and made a part hereof, the same constituting the factual basis for this transaction.

2. All the provisions of this AGREEMENT will be binding upon the successors and assigns of the principal parties hereto.

3. This AGREEMENT may only be modified, assigned, supplemented, amended, or extended by mutual agreement, in writing, by the principal parties hereto.

4. DNR, or its assigns, will prepare, as needed, any necessary plans and specifications, and delineate any land rights and access requirements for the construction of the PROJECT, excluding any potential future mitigation.

5. IEMA, in consultation with DNR, will review and approve the selected PROJECT construction bids prior to contract awards. IEMA reserves the right to modify the contract, if needed, to keep the PROJECT construction costs within acceptable limits. IEMA further reserves the right to review and approve all contract change orders.

6. NRCS will provide for the construction and construction supervision of the PROJECT, excluding any potential future mitigation.

7. CENTREVILLE and the DISTRICT will assume responsibility for the design, construction and construction supervision of any potential future mitigation that might be necessary as a result of the PROJECT construction activities performed within their respective reaches of maintenance responsibility as defined in Item 8 below. Such mitigation design, construction and construction supervision will consist of all work necessary to mitigate impacts to wetlands, of tree removal or for other environmental impacts, not originally defined, which occur as the result of the construction of the emergency work.

8. CENTREVILLE and the DISTRICT will assume responsibility for maintenance of the PROJECT as constructed, including any potential future mitigation. This maintenance will include, but not be limited to, keeping the PROJECT areas clean of all trash and other debris, or other matter that may tend to impede the proper and free flow of water, and the removal of sediment from the channel annually from where it has deposited and where it impedes the proper and free flow of water such that the capacity of the PROJECT will be maintained at the five-year frequency discharge and stage. Grass covered areas will be mowed to a height of six inches or less at least twice each year. Measures will be taken annually to eliminate all unwanted woody growth larger than one-half inch in

diameter from all PROJECT areas, excluding mitigation sites. Measures will also be taken, as required, to correct any substantial erosion problems. CENTREVILLE and the DISTRICT will also be responsible for the monitoring and maintenance, according to permit conditions and approved mitigation plans, of any on-site or off-site mitigation work required as a result of PROJECT construction activities performed within their respective reaches of maintenance responsibility. CENTREVILLE will be responsible for maintenance on WPA Ditch from Canal No. 1 upstream to Glenwood Avenue. DISTRICT will be responsible for maintenance on Canal No. 1 from approximately 200 feet downstream of Lake Drive upstream to WPA Ditch.

    9. CENTREVILLE and the DISTRICT will acquire all necessary land rights, within their respective reaches of maintenance responsibility, for the purposes of PROJECT construction (including all mitigation), construction supervision and maintenance.

    10. CENTREVILLE and the DISTRICT hereby grant to NRCS all necessary land rights and access to the PROJECT for the purposes of PROJECT construction and construction supervision, excluding any potential future mitigation.

    11. CENTREVILLE and the DISTRICT hereby grant to DNR, or its assigns, all necessary land rights and access to the PROJECT area for the purposes of construction inspections and maintenance inspections.

    12. . IEMA will provide for the payment of all eligible costs associated with the PROJECT. Pay estimates for all work, excluding potential future mitigation, will be transmitted to IEMA after receipt of each approved "Engineer's Pay Estimate," signed by NRCS's resident engineer indicating that the work covered therein was completed and a part of the PROJECT. Eligible costs are those as defined through the Public Assistance program (44 CFR, Part 206) and all final eligibility determinations will be made through IEMA.

    13. In the event future mitigation is required, IEMA will provide funds to CENTREVILLE and the DISTRICT for eligible costs incurred within their respective reaches of maintenance responsibility. Eligible costs are those defined through the Public Assistance Program (44 CFR, Part 206) and all final eligibility determinations will be made through IEMA. Payment of all eligible costs is subject to availability of federal and state funding.

    14. DNR, or its assigns, will obtain, in the name of CENTREVILLE and the DISTRICT, all necessary federal and state permits and approvals required for the construction of the PROJECT. CENTREVILLE and the DISTRICT will obtain, in their respective names, and provide all necessary local permits and approvals needed for the construction and maintenance of the PROJECT within their respective reaches of maintenance responsibility.

    15. DNR will perform joint inspections with CENTREVILLE and the DISTRICT no less often than once each year, or more often if conditions so require, to assure adequate maintenance is being performed on the PROJECT.

Failure of CENTREVILLE and/or the DISTRICT to properly perform maintenance on the PROJECT within their respective reaches and in accordance with Item 8 of this AGREEMENT, and as indicated by a report of such inspection, will permit DNR, upon 30 days written notice and continued failure of CENTREVILLE and the DISTRICT to perform the necessary maintenance work, to enter upon the PROJECT land rights to perform the maintenance work. In this instance, CENTREVILLE and the DISTRICT will reimburse DNR for any and all costs that may be incurred by DNR in connection with maintenance within their respective reaches of maintenance responsibility.

16. FEMA requires that the PROJECT be properly maintained as described herein and, if such maintenance is not performed, FEMA reserves the right to withhold any future eligible disaster payments to CENTREVILLE and the DISTRICT for channel clearance within their respective limits of the PROJECT area.

17. CENTREVILLE and the DISTRICT will hold and save IEMA, DNR, NRCS and any of their duly appointed agents and employees harmless against any loss, damage, cause of action, fine or judgment, including all costs connected therewith such as attorney fees, witness fees, filing fees and any other expenses incident thereto, that may be incurred by reason of personal injury, death, property damage, and any or all other claims or suits of whatsoever nature that might arise or result from or as a consequence of the location, construction and maintenance of the PROJECT, or from DNR having to invoke Item 15 of this AGREEMENT.

CENTREVILLE and the DISTRICT will hold IEMA, NRCS and DNR harmless in regard to the handling and disposal of any special wastes that might be discovered on PROJECT land rights.

The participants in this AGREEMENT will not be obligated or responsible to hold any of the other participants harmless against any loss, damages, costs or expenses arising out of negligent acts or omissions by other participants, their agents or employees.

18. All contracts let for the construction of the PROJECT will require that the contractor abide by the provisions of the Davis-Bacon Act of March 3, 1931, as amended (46 Sta. 1494, as amended, 40 U.S.C. 276a).

19. The participants in this AGREEMENT will maintain, for a minimum of five years after completion of the PROJECT, adequate books, records and supporting documentation to verify the amounts, recipients and uses of all disbursements of funds passing in conjunction with this AGREEMENT; all books, records and supporting documents related to the PROJECT will be available for review by Federal and State auditors; and the participants of this AGREEMENT will cooperate fully with any Federal and State audit and will provide full access to all relevant materials. Failure to maintain the books, records and supporting documents required by this AGREEMENT will establish a presumption in favor of IEMA/FEMA for the recovery of any funds under this AGREEMENT for which adequate books, records and supporting documentation are not available to support their purported disbursement.

4

20. CENTREVILLE will maintain eligibility in the National Flood Insurance Program.

IN WITNESS WHEREOF, the parties have set their hands and seals the day and year written, and represent that the signatures below are duly authorized to execute this AGREEMENT on behalf of their respective bodies, and the effective date of this AGREEMENT is the date approved and executed by the Director of DNR.

## ILLINOIS DEPARTMENT OF NATURAL RESOURCES

RECOMMENDED:

_[signature]_

Donald R. Vonnahme, Director
Office of Water Resources

APPROVED:

_[signature]_

Brent Manning, Director
Department of Natural Resources
Date: 11/7/96

APPROVED AS TO FORM
AND LEGAL SUFFICIENCY:

_[signature]_

Phillip Montalvo, Chief Legal Counsel

## ILLINOIS EMERGENCY MANAGEMENT AGENCY

RECOMMENDED:

_[signature]_

Rex Coble, Deputy Director

APPROVED:

_[signature]_

John Mitchell, Director

## CITY OF CENTREVILLE

ATTEST:

_[signature]_

Billie Jean Miller, City Clerk

APPROVED:

_[signature]_

Riley Owens, Mayor

5

INTERGOVERNMENTAL AGREEMENT
for the
EMERGENCY WORK AND MAINTENANCE
on
WPA DITCH AND CANAL NO. 1
(REACH D)

CONTRACT NUMBER 024

METRO-EAST SANITARY DISTRICT

ATTEST:

*[signature]*
Rosemarie Heath, Clerk

APPROVED:

*[signature]*
Walter Greathouse, Sr., President
Board of Commissioners

U. S. DEPARTMENT OF AGRICULTURE/NATURAL RESOURCES
CONSERVATION SERVICE

APPROVED:

*[signature]*
William G. Kobylski
Acting State Conservationist

6

SPONSORSHIP AGREEMENT
between the
CITY OF CENTREVILLE
and the
STATE OF ILLINOIS/DEPARTMENT OF NATURAL RESOURCES
for the
CENTREVILLE CULVERT REPLACEMENT PROJECT

Contract Number 035

THIS AGREEMENT made between the City of Centreville, St. Clair County, Illinois (hereinafter referred to as the "CITY"), and the Department of Natural Resources, Office of Water Resources (hereinafter referred to as "DNR"), acting for and on behalf of the State of Illinois,

WITNESSETH:

WHEREAS, the CITY and DNR are legal entities organized and existing under the laws of the State of Illinois having among their powers the authority to contract with one another to perform such undertakings as described herein; and

WHEREAS, the CITY and DNR are working together to develop a flood control improvement plan, supplementing the proposed FEMA emergency cleanout project on Canal No. 1 and WPA Ditch, to alleviate residential flooding along WPA Ditch; and

WHEREAS, the improvement would consist of replacing the existing culverts under Rogers Avenue, Margaret Street, Le Page Boulevard and 72nd Street with larger pipe culverts at lower elevations. The capacities of these culverts will be as specified in the July 1975 Illinois Department of Transportation plan entitled "Interim Drainage

Improvement Plan For Central Metro-East Area." Improvement works as finally approved by the CITY and DNR are hereinafter referred to as the **"IMPROVEMENT"**; and

**WHEREAS**, the parties hereto wish to set forth herein the intent of the parties regarding the design, implementation, construction, cost sharing, and perpetual maintenance of the IMPROVEMENT.

**NOW THEREFORE**, for and in consideration of the benefits to be derived from the construction of this IMPROVEMENT, the sufficiency of which is hereby acknowledged, the parties hereto agree to the following terms and conditions:

## ARTICLE I. SPECIAL CONDITIONS

A. The recitals set forth above are incorporated herein by reference and made a part hereof, the same constituting the factual basis for this transaction.

B. The current estimated construction cost of the IMPROVEMENT is $65,000. The CITY and DNR will share in the construction cost of the IMPROVEMENT in the following manner:

   1. The CITY's share will include the actual cost of materials, incidental supplies and road resurfacing necessary to build the IMPROVEMENT as finally determined;

   2. DNR's share will include providing the equipment and labor necessary to build the IMPROVEMENT, as finally determined.

C. DNR's obligation hereunder will be limited to the equipment and labor costs necessary for IMPROVEMENT construction and will expire when the IMPROVEMENT is completed or June 30, 2000, whichever comes first. DNR's funding obligation will cease immediately without penalty of further payment or work being required if in any fiscal year the Illinois General Assembly fails to appropriate or otherwise make available sufficient funds for this AGREEMENT.

D. All provisions of this AGREEMENT will be binding upon the successors and assigns of the parties hereto.

E. This AGREEMENT may only be modified, assigned, supplemented, or amended by mutual agreement, in writing, by the parties hereto.

2

## ARTICLE II. CITY OF CENTREVILLE

A. The CITY will have the right to review and approve the final design plans and specifications for the IMPROVEMENT, and will provide written confirmation of their approval prior to IMPROVEMENT construction.

B. The CITY will acquire in the name of the CITY, without cost to DNR, all land rights necessary for construction and maintenance of the IMPROVEMENT. It is understood that any required land rights owned by a unit of local government other than the CITY may remain in the name of such unit of local government. However, the CITY must obtain, through proper approval of the owner's governing body, a temporary right to construct and a permanent right of access on any such land rights to allow the required operation and maintenance of the IMPROVEMENT.

All expenses associated with acquiring the CITY's land rights, such as title commitments, attorney fees, survey costs, appraisal costs, recording costs, preparation of legal descriptions and plat drawings, and any other incidental expenses will be borne by the CITY.

C. The CITY will grant or cause to be granted to DNR and its assigns, at no cost to DNR, the required interest in the land rights acquired by the CITY necessary to construct the IMPROVEMENT. The CITY hereby grants to DNR the right to enter upon any land rights obtained by the CITY in the event Item D of Article III is invoked by DNR for failure of the CITY to adequately maintain the IMPROVEMENT. The CITY will permit DNR to use any CITY owned streets or alleys which may be required to complete the IMPROVEMENT.

D. The CITY hereby authorizes DNR to serve as its agent in the acquisition of all Federal and State permits necessary for the construction, operation and maintenance of the IMPROVEMENT. All permits will be applied for in the name of the CITY. The CITY will obtain any local permits necessary for the construction, operation and maintenance of the IMPROVEMENT.

E. The CITY will be responsible for the costs of all utility markings, alterations or relocations and for all fence removal and/or replacement, if any, which includes any utility alterations or relocations, and fence removal and/or replacement shown on the approved plans. Utilities include, but are not limited to, electrical, telephone, and cable televisions lines, and gas, oil, sewer and water pipelines.

F. The CITY will accept and assume all responsibility for the operation, maintenance, repair and rehabilitation of the IMPROVEMENT. Maintenance will include, but not be limited to, keeping the IMPROVEMENT clean of all trash and debris, or other matter, such as silt, that may tend to impede the proper and free flow of

3

water. ==Grass covered areas will be mowed to a height of six inches or less at least twice each year. Measures will be taken annually to eliminate all unwanted woody growth larger than one-half inch in diameter. Measures will also be taken as required to correct any substantial erosion problems.==

G. The CITY will be responsible for purchasing and supplying all materials necessary to construct the IMPROVEMENT. Materials include, but are not limited to, culvert pipe, rock, road oil, sand, grass seed, mulch, and fertilizer.

H. The CITY will furnish trucks, drivers, and all other labor and equipment required to properly dispose of all old culverts and debris removed by DNR as part of the IMPROVEMENT. The CITY will be responsible for all costs associated with the proper disposal of the culverts and debris.

I. The CITY will restore all roadway surfaces disturbed by construction of the IMPROVEMENT at no cost to DNR.

J. The CITY will be responsible for all traffic control associated with the construction of the IMPROVEMENT including notification of road closures to through traffic at each culvert replacement site. The CITY will also provide all road signs necessary to protect the IMPROVEMENT construction zone.

K. The CITY will maintain eligibility in the National Flood Insurance Program. The CITY will continue to adopt and enforce appropriate ordinances satisfactory to the Federal Emergency Management Agency and DNR which the CITY is required to enact relative to the regulation of development in floodplains within the jurisdiction of the CITY.

L. The CITY will maintain, for a minimum of five years after completion of the IMPROVEMENT, adequate books, records and supporting documents to verify the amounts, recipients, and uses of all disbursements of funds paid in conjunction with this AGREEMENT. This AGREEMENT and all books, records and supporting documents related to the IMPROVEMENT shall be made available for review and audit by the Illinois Auditor General and/or DNR. The CITY agrees to cooperate fully with any audit conducted by the Auditor General and/or DNR and to provide full access to all relevant materials. Failure to maintain the books, records, and supporting documents required by this Paragraph shall establish a presumption in favor of DNR for the recovery of any funds paid by DNR under this AGREEMENT for which adequate books, records, and supporting documentation are not available to support their purported disbursement.

M. The CITY will hold and save DNR and any of its duly appointed agents and employees harmless against any loss, damage, cause of action, fine or judgment, including all costs connected therewith such as attorney fees, witness fees, filing fees and any other expenses incident thereto, that may be incurred by reason of

4

personal injury, death, property damage, and any or all other claims or suits of whatsoever nature that might arise or result from or as a consequence of the location, existence, operation and maintenance of the IMPROVEMENT, or from DNR having to invoke Item D of Article III of this AGREEMENT. The CITY will further hold DNR harmless in regard to any hazardous substances which might be discovered on the land rights acquired by the CITY in connection with the IMPROVEMENT. The CITY will not be obligated or responsible to hold DNR harmless against any loss, damages, costs or expenses arising out of negligent acts or omissions by DNR or its agents or employees.

### ARTICLE III. DEPARTMENT OF NATURAL RESOURCES

A. DNR will provide, at no cost to the city, all field surveying, engineering, construction plans and documentation necessary to construct the IMPROVEMENT as finally agreed to by the parties hereto for implementation.

B. DNR will be responsible for providing all labor and equipment necessary to construct the IMPROVEMENT, except for restoration of roadway surfaces disturbed during the construction of the IMPROVEMENT.

C. DNR, acting as an agent for the CITY, will be responsible for obtaining all federal and state permits required to implement and maintain the IMPROVEMENT. All permits will be applied for in the CITY's name.

D. DNR will make periodic inspections of the IMPROVEMENT in order to assure that adequate maintenance is being accomplished on the IMPROVEMENT by the CITY. Should DNR determine that a maintenance problem exists, a joint inspection will be scheduled and made by the CITY and DNR. Failure of the CITY to properly maintain the IMPROVEMENT, as indicated by a written report of such inspection, will permit DNR upon thirty (30) days written notice and continued failure of the CITY to perform the necessary maintenance work, to enter upon the IMPROVEMENT land rights for the purpose of performing such maintenance work. In this instance, the CITY will reimburse DNR for any and all costs which may be incurred by DNR in connection therewith.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year written, and represent that the signatories below are duly authorized to execute this AGREEMENT on behalf of their respective body, and the effective date of this AGREEMENT is the date approved and executed by the Director of DNR.

### STATE OF ILLINOIS/DEPARTMENT OF NATURAL RESOURCES

RECOMMENDED:

*[signature]*

Donald R. Vonnahme, Director
Office of Water Resources

APPROVED:

*[signature]*

Brent Manning, Director
Department of Natural Resources
Date: 1/31/97

**APPROVED AS TO FORM AND:**
**LEGAL SUFFICIENCY:**

*[signature]*

Phillip Montalvo
Chief Legal Counsel

### CITY OF CENTREVILLE

ATTEST:

*[signature]*

Billie Jean Miller, City Clerk

APPROVED:

*[signature]*

Riley Owens, Mayor
Date:

6

**AMENDMENT NUMBER ONE**
to the
SPONSORSHIP AGREEMENT
between the
CITY OF CENTREVILLE
and the
STATE OF ILLINOIS/DEPARTMENT OF NATURAL RESOURCES
for the
**CENTREVILLE CULVERT REPLACEMENT PROJECT**

**Contract Number 035**

**WHEREAS,** the City of Centreville, St. Clair County, Illinois (hereinafter referred to as the **"CITY"**), and the Department of Natural Resources, Office of Water Resources (hereinafter referred to as **"DNR"**), acting for and on behalf of the State of Illinois, have entered into a Sponsorship Agreement covering the implementation of the Centreville Culvert Replacement Project (hereinafter referred to as the **"IMPROVEMENT"**); and

**WHEREAS**, the Sponsorship Agreement between the CITY and DNR was executed on January 31, 1997; and

**WHEREAS**, the Illinois General Assembly has appropriated funds to DNR for the IMPROVEMENT under Public Act 89-0501, Article 49, Section 23 for Small Drainage and Flood Control Projects; and

**WHEREAS**, DNR has determined that the execution of this amendment will not result in the expenditure of more than $250,000 in a fiscal year; and

**WHEREAS**, DNR has determined that (1) the circumstances necessitating this amendment were not reasonably foreseeable at the time the agreement was executed, (2) the amendment is germane to the agreement as originally executed, and (3) this amendment to the agreement is in the best interest of the State of Illinois.

**NOW THEREFORE**, for and in consideration of the premises contained herein, the parties hereto, being the same parties as to the January 31, 1997 Sponsorship Agreement, agree to the following modifications:

1. The fourth paragraph on Page 1 of the Agreement will be changed to read as follows:

"**WHEREAS**, the improvement would consist of replacing the existing culverts under 72nd, 73rd, 74th and 75th Streets with larger pipe culverts at lower elevations. The capacities of these culverts will be as determined in the July 1975 Illinois Department of Transportation plan entitled 'Interim Drainage Improvement Plan For Central Metro-East Area.' Improvement works as finally approved by the CITY and DNR are hereinafter referred to as the '**IMPROVEMENT**'; and"

2. Article I, Items B and C, on Page 2 of the Agreement, will be changed to read as follows:

"B. The current estimated construction costs of the IMPROVEMENT are $62,000. The CITY and DNR will share in the construction costs of the IMPROVEMENT in the following manner:

1. The CITY's share will include the actual costs of materials and incidental supplies necessary to construct concrete culvert crossing improvements at 74th Street and the concrete culvert on the private right-of-way between 73rd and 74th Streets;

2. The CITY's share will also include the costs of all seed, mulch and fertilizer as well as all roadway resurfacing necessary as part of construction of the IMPROVEMENT as finally determined;

3. The CITY's share of construction costs is estimated to be $15,000;

4. DNR's share will include the actual costs of materials and incidental supplies necessary to construct concrete culvert crossings and ditch improvements at 72nd, 73rd and 75th Streets;

5. DNR's share will also include providing the equipment and labor necessary to build the IMPROVEMENT, as finally determined, excluding all roadway resurfacing;

6. DNR's share of construction costs for the IMPROVEMENT, excluding labor and machinery costs as described in Item B (5), are estimated to be $47,000.

C. DNR's obligation hereunder will be limited to the equipment, labor and material costs, noted in Item B above, necessary for construction of the IMPROVEMENT, and will expire when the IMPROVEMENT is completed or June 30, 2000, whichever comes first. DNR's funding obligation will cease immediately without penalty of further payment or work being required if in any fiscal year the Illinois General Assembly fails to appropriate or otherwise make available sufficient funds for this AGREEMENT."

3. Article II, Item G, on Page 4 of the Agreement will be changed to read as follows:

"G. The CITY will be responsible for purchasing and supplying all materials necessary to construct the IMPROVEMENT. Materials include, but are not limited to, concrete culvert pipe and culvert pipe end sections, rock, road oil, sand, grass seed, mulch and fertilizer."

4. Article II, Item M, Sentence 2 on Page 5 of the Agreement will be changed to read as follows:

"M. The CITY will further hold DNR harmless in regard to any hazardous or special wastes that might be discovered on the land rights acquired by the CITY in connection with the IMPROVEMENT."

2

5. Article III, Item C, on Page 5 of the Agreement will be inserted to read as follows:

"C.   DNR will be responsible for reimbursing the CITY for all material costs, excluding those associated with roadway restoration and with seeding, mulching, and fertilizing, required for constructing the IMPROVEMENT at 72nd, 73rd and 75th Streets."

6. Article III, Items C and D, on Page 5 of the Agreement will become Items D and E respectively.

7. All other covenants of the January 31, 1997 Sponsorship Agreement shall remain in full force and effect.

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seals the day and year written, and represent that the signatories below are duly authorized to execute this AMENDMENT on behalf of their respective body, and the effective date of this AMENDMENT is the date approved and executed by the Director of DNR.

### STATE OF ILLINOIS/DEPARTMENT OF NATURAL RESOURCES

RECOMMENDED:

_____
Donald R. Vonnahme, Director
Office of Water Resources

APPROVED:

_____
Brent Manning, Director
Department of Natural Resources
Date: 5/27/97

APPROVED:

_____
Robert G. Mool, Legal Counsel

### CITY OF CENTREVILLE

ATTEST:

_____
Billie Jean Miller, City Clerk

APPROVED:

_____
Riley Owens, Mayor
Date: 5-20-97

3