IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTREVILLE CITIZENS FOR CHANGE *et al.*, )<br>)<br>  Plaintiffs, )<br>)<br>vs. )<br>)<br>CITY OF CAHOKIA HEIGHTS, )<br>COMMONFIELDS OF CAHOKIA )<br>PUBLIC WATER DISTRICT, )<br>METRO EAST SANITARY DISTRICT,)<br>)<br>  Defendants. ) | Case No: 21-cv-00842-DWD |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court are four Motions to Dismiss filed by Defendants Commonfields of Cahokia Public Water District ("Commonfields"), the City of Cahokia Heights ("Cahokia Heights"), and the Metro East Sanitary District ("MESD") (Docs. 60, 61, 62, 83). Plaintiffs responded to these motions (Docs. 65, 69, 87). For the reasons set forth below, the Motions will be denied.

### Background

Plaintiffs, Centreville Citizens for Change ("Centreville"), and thirty-one of its members and individual citizens of Centreville, Illinois (the "Individual Plaintiffs")[1] seek

---

[1] The Individual Plaintiffs include: Walter Byrd, Lester Goree, William McNeal, Delores Saffold-Crigler, Barbara Eiland, Sharon Smith, Bobby Smith, Yvette Lyles, Patricia Greenwood, Leon Spruell, Mario Gladney, Tamara Gladney, Hattie Ivy, Sheila Gladney, Joan Dancy, Michael Johnson, Patricia Johnson, Vanesssa Marion, Carolyn Taggart, Maurice Taggart, Leichue Hych, Lakesha Ware, Mary Anthony, Leola Green, Jeanette Green, Vittorio Blaylock, Allene Hopkins, James Cox, Rueben Ann Cox, Onnie Randolph, and Kenneth P. McIntyre.

1

recourse against Defendants for their alleged negligence in allowing sewage to seep into public waterways and residential areas. Plaintiffs' Third Amended Complaint (Doc. 59) sets forth 11 counts:

**Counts 1 and 2**: Plaintiff Centreville asserts claims for Declaratory Judgment (Count 1) and Injunctive Relief (Count 2) against Defendants Commonfields and Cahokia Heights for their alleged violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311;

**Counts 3 and 4**: Plaintiffs Byrd, Lyles, J. Green, L. Green, M. Gladney, T. Gladney, Saffold-Crigler, Hych, Ware, Marion, McNeal, Goree, Greenwood, Gladney, Anthony, Ivy, M. Johnson, P. Johnson, S. Smith, B. Smith, Hopkins, C. Taggart, M. Taggart, Randoph, and McIntrye assert takings claims pursuant to the Fifth Amendment of the United States Constitution and Article I, Section 15 of the Illinois State Constitution against Defendants Cahokia Heights and MESD related to recurrent stormwater flooding;

**Count 5**: Plaintiffs Byrd, J. Green, Saffold-Crigler, Hych, Ware, McNeal, S. Smith, B. Smith, Greenwood, Anthony, C. Taggart, M. Taggart, Hopkins, Blaylock, M. Johnson, P. Johnson, and Randolph bring a private nuisance claim against Defendants Commonfields and Cahokia Heights related to sewage contamination;

**Count 6**: Plaintiffs Byrd, Lyles, J. Green, L. Green, M. Gladney, T. Gladney, Saffold-Crigler, Hych, Ware, Marion, McNeal, S. Smith, B. Smith, Goree, Eiland, Greenwood, Gladney, Anthony, C. Taggart, M. Taggart, Dancy, Ivy, Hopkins, Blaylock, Johnson, J. Cox, R. Cox, and Randolph, bring a private nuisance claim against Defendants Cahokia Heights and MESD related to stormwater drainage;

**Count 7**: All Individuals Plaintiffs assert a public nuisance claim against Defendants Cahokia Heights and MESD related to stormwater flooding;

**Count 8**: Plaintiffs Byrd, J. Green, L. Green, Saffold-Crigler, Hych, Ware, McNeal, S. Smith, B. Smith, Greenwood, Anthony, C. Taggart, M. Taggart, Hopkins, Blaylock, M. Johnson, P. Johnson, J. Cox, R. Cox, and Randolph assert a negligence claim against Defendants Commonfields and Cahokia Heights related to sewage maintenance and recurrent overflows;

**Count 9**: All Individual Plaintiffs assert a negligence claim against Defendants Cahokia Heights and MESD related to recurrent stormwater flooding;

**Count 10:** Plaintiffs Byrd, J. Green, Saffold-Crigler, Hych, Ware, McNeal, S. Smith, B. Smith, Greenwood, Anthony, C. Taggart, M. Taggart, Hopkins, Blaylock, M. Johnson, P. Johnson, and Randolph assert a negligent trespass claim against Defendants Commonfields and Cahokia Heights related to sewage overflows and backups; and

**Count 11**: Plaintiffs Byrd, Lyles, J. Green, L. Green, M. Gladney, T. Gladney, Saffold-Crigler, Hych, Ware, Marion, McNeal, S. Smith, B. Smith, Goree, Eiland, Greenwood, Gladney, Anthony, C. Taggart, M. Taggart, Ivy, Hopkins, Blaylock, M. Johnson, P. Johnson, J. Cox, R. Cox, Randoph, and McIntyre assert a negligent trespass claim against Defendants Cahokia Heights and MESD related to stormwater flooding.

According to the allegations in the complaint, Defendant Commonfields of Cahokia Public Water District ("Commonfields") owned and operated the sewage system in the area of Cahokia Heights, Illinois formerly known as Centreville ("Centreville"). In 2021, Defendant City of Cahokia Heights ("Cahokia Heights") assumed the ownership, operation, and all debts and liabilities associated with the Centreville Sewer System. Cahokia Heights also operates another municipal sewage system which Plaintiffs refer to as the "Cahokia Heights' Sewage System."

Plaintiffs allege that these two sewage systems are dysfunctional and suffer from years of neglect. As a result, stormwater and groundwater frequently enter the sewage systems, and cause residential neighborhoods in Centreville to suffer from raw sewage pools or spews. Plaintiffs maintain that in some areas sewage spews occur "on a nearly daily basis" resulting in sewage accumulation in yards, roadside ditches, and backups into residents' tubs, toilets, and sinks. The sewage system failures have also caused

3

property damage to Plaintiffs' homes, disrupted Plaintiffs' lives, and caused sewage to flow into local waterways, including tributaries to the Mississippi River.

In addition to the two sewage systems, Cahokia Heights is also responsible for managing stormwater in the Centreville area. Plaintiffs allege that Cahokia Heights has failed to maintain and develop functional stormwater infrastructure to ensure stormwater channels away from residential homes. Plaintiffs also allege that Defendant MESD Sanitary District ("MESD") has failed to maintain local waterways. Thus, many Centreville neighborhoods suffer from recurrent flooding devastating Plaintiffs' homes and community. According to Plaintiffs, the combination of mismanaged stormwater infrastructure and the broken sewage systems "compounds the destruction wrought by each alone" and have "created a vicious cycle of pollution and flooding that endangers the Individuals Plaintiffs and members of Centreville Citizens for Change, contaminates waters, and leaves destroyed property in its wake." (Doc. 59, pp. 2-3).

In support of the allegations in their Complaint, Plaintiffs submitted photographs of alleged sewage backups. Plaintiffs also cite to a sampling of approximately 1,500 Commonfields' sewer system work orders submitted from 2012 to 2019 to illustrate the sewage backups and overflows into residential streets, homes, and yards in the community (Doc. 59, ¶ 236). Plaintiffs also allege, based on their knowledge of Defendants' budgets and permit records, that Commonfields and Cahokia Heights do not routinely inspect or maintain the Commonfields Sewage System and do not typically

4

budget funds in anticipation of emergency repairs or investments to improve the sewer systems (Doc. 59, p. 56).

Plaintiffs also submitted copies of inspection reports, communications, and violation notices from the Illinois Environmental Protection Agency (Doc. 59-1), along with agreements made among Defendants and the State of Illinois' Emergency Management Agency and Department of Natural Resources, and the United States Department of Agriculture/Natural Resources Conservation Service (Doc. 59-1). Plaintiffs further allege that a water contamination test conducted on a storm drain in Centreville by the United States Environmental Protection Agency revealed the presence of fecal coliform 97 times higher than Illinois' water quality standard for fecal coliform (Doc. 59, ¶ 250).

Defendants now seek to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f). Cahokia Heights and MESD both argue that the sheer length of Plaintiffs' complaint coupled with scores of what they regard as irrelevant details render the complaint vulnerable to dismissal under 12(b)(6) or substantial amendment under 12(f). Commonfields, however, moves for dismissal under Rule 12(b)(6) and the Illinois Public Water District Act, 70 ILCS 3705, *et seq.*, arguing that they no longer exist as an entity subject to joinder under Illinois law. In addition to Commonfields' motion under Rule 12(b)(6), Commonfields recently moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) asserting that the Court has no jurisdiction over it because of their dissolution (Doc. 83).

## Legal Standards

**A. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp.*, 550 U.S. at 555). The court will accept all well-pleaded allegations as true. *Ashcroft*, 556 U.S. at 678. However, the court need not accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Ashcroft*, 556 U.S. at 677–78). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Arnett*, 658 F.3d at 751–52 (internal quotations and citation omitted).

**B. Fed. R. Civ. P. 12(f)**

Rule 12(f) permits the court to strike parts of the complaint that are "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). "Motions to strike, however, are disfavored and will usually be denied." *Hoffman-Dombrowski v. Arlington Int'l*

*Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1009 (N.D. Ill. 1998). To strike a pleading, Defendants must generally demonstrate that "the allegations being challenge are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *Id.* (internal citations omitted). Prejudice occurs when the pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party. *Id.* Statements or allegations should not be stricken from a pleading "unless it is clear that it can have no possible bearing on the subject matter of the litigation." *Capitol Indem. Corp. v. Tranel Devs., Inc.*, 144 F.R.D. 346, 347 (N.D. Ill. 1992).

### C. Fed. R. Civ. P. 12(b)(1)

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, the Court should generally accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See, e.g. St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). On such a motion, the Court is not bound to accept the truth of the complaint's allegations but may look beyond the complaint and the pleadings to evidence that calls the Court's jurisdiction into doubt. *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000).

### Discussion

I. **Defendant Commonfields' Motions to Dismiss (Doc. 60; Doc. 83)**

Defendant Commonfields moves for the dismissal of all claims against it pursuant to Fed. R. Civ. P. 12(b)(6) arguing that it was dissolved pursuant to the Illinois Public

7

Water Districts Act, 70 Ill. Comp. Stat. Ann. 3705/34, and no longer has any power or authority to act or participate in this lawsuit (Doc. 60). In a supplemental motion filed on September 29, 2022, Commonfields also argues that it should be dismissed for a lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), arguing that it can no longer be a party to this or any lawsuit because of its dissolution, and the Court has no authority to resolve any challenges to the state court dissolution proceedings (Doc. 83).

To dissolve a public water district in Illinois, the Illinois Public Water District Act provides:

> After the board of trustees of a dissolving public water district have: (1) paid all debts and obligations of the district; (2) closed up all of the business of the district; and (3) refunded all surplus money, the trustees shall file a statement under oath with the Circuit Court showing all closing transactions. If the Circuit Court approves the statement, it shall issue an order dissolving the district. Upon issuance of such order, the duty of the board of trustees to close up the district business is terminated, and all trustees and officers of the district, whether the terms for which they were elected or appointed have expired or not, shall cease to have any power or authority.

70 Ill. Comp. Stat. Ann. 3705/34. Commonfields submits that it followed this process for dissolution and provides the following timeline of its dissolution: On April 6, 2021, Commonfields dissolved pursuant to a referendum (Doc. 83-1). On June 9, 2021, Cahokia Heights approved a Resolution Authorizing the Execution of an Intergovernmental Agreement with Commonfields (Doc. 83-1). This Agreement provided that Commonfields would transfer all of its assets to Cahokia Heights, and Cahokia Heights agreed to continue operating Commonfields' water business (Doc. 83-1). Cahokia Heights also agreed to assume all debts and liabilities and obligations of Commonfields

(Doc. 83-1). On December 1, 2021, Judge Gleeson of the Twentieth Judicial District of St. Clair County, Illinois entered an order approving Commonfields' report and dissolving Commonfields (Doc. 83-2). This date was after Plaintiffs initiated this action, as Plaintiffs filed their original complaint on July 20, 2021 (Doc. 1). In sum, Commonfields argues that it was properly dissolved pursuant to Illinois law and no longer has capacity to participate in this lawsuit (Doc. 60). Commonfields also argues that the Court has no authority to resolve any challenges to its dissolution proceedings (Doc. 83).

Plaintiffs admit that Commonfields completed a dissolution process after the filing of Plaintiffs' complaint (Doc. 59, ¶¶ 14, 17-20; Doc. 87). However, Plaintiffs argue that dismissal of Commonfields from this action is premature for at least two reasons (Doc. 60). First, Plaintiffs argue that the dissolution process does not terminate Commonfields' potential liabilities because Commonfields is subject to continuing liability under Illinois law and continues to have insurance coverage which could cover Plaintiffs' claims for damages. Plaintiffs also argue that Commonfields has not yet provided complete documentation of its dissolution process so to explain certain irregularities Plaintiffs identified about the sewage systems, including detailing how the Commonfields sewage system was consolidated with the Cahokia Heights' systems (Doc. 87).

Unfortunately, the Illinois Public Water District Act is silent regarding the question of whether public water districts remain liable after dissolution. Commonfields maintains that this silence is intentional, indicating that the state legislature intended that liability ceases upon dissolution or consolidation (Doc. 70; Doc. 83) (citing *Volkmar v. State*

*Farm Mut. Auto. Ins. Co.*, 104 Ill. App. 3d 149, 151 (1982) ("[A] dead person is a non-existent entity and cannot be party to a suit. Therefore, proceedings initiated against an individual who is deceased at the time of the filing of suit are a nullity.")). Whereas Plaintiffs argue that Commonfields is subject to continuing liability after its dissolution, similar to how Illinois law permits continuing liability for other entities after their dissolution. *See, e.g.*, 805 Ill. Comp. Stat. Ann. 5/12.80 (permitting dissolved corporations to be sued for five years after dissolution); 65 Ill. Comp. Stat. Ann. 5/7-7-12 (providing continuing liabilities for consolidated municipalities).

Commonfields' Motions pose two distinct challenges to the Court's authority. First, Commonfields argues that it no longer has capacity to be sued because it is a dissolved non-entity, and Illinois state law does not provide for continuing liability for dissolved public water districts. Second, Commonfields argues that the Court is without jurisdiction to evaluate the sufficiency of the state court dissolution proceedings. While both arguments share similarities, the first – that Commonfields lacks capacity to be sued due to its dissolution – is a question of capacity and does not implicate the Court's subject matter jurisdiction. *See, e.g.*, *Doermer v. Oxford Fin. Grp., Ltd.*, 884 F.3d 643, 645–46 (7th Cir. 2018) ("capacity problems implicate a plaintiff's ability to state a claim, not the district court's subject-matter jurisdiction."); *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345 (7th Cir. 1991). Indeed, capacity issues are also subject to waiver. *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009); *APC Filtration, Inc. v. Becker*, 646 F. Supp. 2d 1000, 1005 (N.D. Ill. 2009).

Here, the Complaint alleges that this Court has original, federal question jurisdiction over the Clean Water Act claims and federal takings claims pursuant to: 28 U.S.C. § 1331 (actions arising under the laws of the United States); 33 U.S.C. § 1365(a) (the Water Pollution Prevention and Control Act); and the Fifth Amendment of the United States Constitution. The Complaint also alleges that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims that arise under state statutory and common law. These claims include state takings and torts claims. The Court is therefore satisfied that it has original jurisdiction over the present federal claims and supplemental jurisdiction over the state law claims.

Commonfields has instead improperly framed its capacity defense as a motion to dismiss for want of jurisdiction. Nevertheless, in evaluating the sufficiency of the Complaint, the Court observes that Plaintiffs were not required to provide specific allegations concerning Commonfields' capacity. *See* Fed. R. Civ. P. 9(a)(1)(A) ("Except when required to show that the court has jurisdiction, a pleading need not allege: (A) a party's capacity to sue or be sued."). Instead, Rule 9(a) requires a defendant to plead the absence of capacity. *Delta Consulting Group, Inc.*, 554 F.3d at 1140 ("The lack of capacity to sue or be sued is a defense that must be pleaded with specificity, or it is waived."); *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996) ("Questions involving a party's capacity to sue ... must ... be identified in either a responsive pleading or motion."); *Wagner Furniture Interiors, Inc.*, 929 F.2d at 345; *Tindall v. Union Pac. R.R. Co.*, No. 17-1221, 2017 WL 4155428, at *3 (C.D. Ill. Sept. 19, 2017). Further, because questions involving a party's capacity to

sue or be sued turn upon issues of fact, *see Wagner Furniture Interiors, Inc.*, 929 F.2d at 345, the Court finds it more appropriate to address this issue in a separately briefed motion after pleading and additional discovery. For these reasons, Commonfields' Motions (Doc. 60; Doc. 83) are **DENIED**.

In so ruling, the Court is cognizant of Commonfields' additional argument concerning the validity of its dissolution proceedings. Indeed, should Plaintiffs interject a direct challenge to the state dissolution proceedings, the *Rooker-Feldman* doctrine might become relevant. The *Rooker-Feldman* doctrine is named for two United States Supreme Court decisions, *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). It "precludes lower federal court jurisdiction over claims seeking review of state court judgments … no matter how erroneous or unconstitutional the state court judgment may be." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (citation omitted). It is a "narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

At this stage, however, it is not clear whether Plaintiffs intend to pursue a challenge to the state court dissolution proceedings. Indeed, Plaintiffs allege no deficiencies with the dissolution proceedings in their Complaint. Further, in their response memorandum (Doc. 87), Plaintiffs stated that they are "not challenging the

Circuit Court's dissolution decision, but rather explaining how the irregularities during the dissolution process could impact Plaintiffs' ability to obtain relief in this case." (Doc. 87, p. 10). Thus, the Court finds it appropriate to address any issues related to the validity of the dissolution proceedings, to the extent they are raised, when it addresses Commonfields' capacity defense, or if Plaintiffs otherwise interject a direct challenge to the dissolution proceedings in support of their claims.

## II. Defendants Cahokia Heights and MESD's Motions (Doc. 61; Doc. 62)

Defendants Cahokia Heights and MESD (hereinafter "Defendants") move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(f) arguing that the Complaint is too lengthy and contains seemingly irrelevant and unintelligible information in violation of Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants also argue that despite including alleged unnecessary details, Plaintiffs failed to reference specific enough details of each flooding event, the pieces and locations of infrastructure involved, the alleged condition of each piece of infrastructure and the specific properties each piece of infrastructure service, and the involvement of each individual Defendant in relation to the specific factual allegations (Doc. 61; Doc. 62). In sum, Defendants argue that they cannot formulate an accurate response to the claims asserted and ask the Court to dismiss or strike the Complaint.

Plaintiffs, however, argue that the Complaint is "sufficiently specific and clear," (Doc. 69), and uses helpful descriptive headings, clear language within paragraphs, and

includes relevant and detailed facts such as dates and location of events. Plaintiffs also maintain that Defendants' arguments are largely inconsistent because they argue that they cannot understand the claims against them, yet both Defendants list the applicable claims in their Motions (*See, e.g.*, Doc. 61, at p. 1-2; Doc. 62, at ¶¶ 2, 10).

To state a claim, a Complaint must comply with Rule 8 by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The primary purpose of these pleading requirements is to give defendants fair notice of the claims against them and the grounds supporting the claims. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic Corp.*, 550 U.S. at 555 ); *see also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

"[U]ndue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("Where a complaint does not comply with Rule 8's mandate of a 'short and plain statement of the claim' but nevertheless puts the defendant on notice of the plaintiff's claims, dismissal is inappropriate 'merely because of the presence of superfluous matter.'") (citing *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)). However, "[l]ength may make a complaint unintelligible[ ] by scattering and concealing in a morass of irrelevancies the few allegations that matter." *U.S. ex rel. Garst*, 328 F.3d at 378. "[U]nintelligibility is

14

certainly a legitimate reason" to reject a complaint. *Stanard*, 658 F.3d at 798. The issue here, is notice: "where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Id.* at 798. For example, in *Garst*, the Seventh Circuit "affirmed the dismissal of a 155-page, 400-paragraph complaint that would have forced defendants to spend countless hours 'fishing' for the few relevant allegations."). *Id.* (citing *U.S. ex rel. Garst*, 328 F.3d at 378.). Thus, a complaint is appropriately dismissed if it presents a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim and take[s] a general 'kitchen sink' approach to pleading the case. Such complaints frustrate Rule 8's objective: 'framing the issues and providing the basis for informed pretrial proceedings.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946–47 (7th Cir. 2013) (internal markings and citations omitted) brackets omitted); *in accord Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013).

  Here, however, while the Third Amended Complaint is not short or plain, containing a total of 284 paragraphs across 112 pages, Plaintiffs' claims are intelligible and precise enough to meet the requirements of Rule 8. Indeed, some claims, like the ones here, require more complex pleading due to the to the legal theories involved and the multiple parties and claims presented. *See, e.g.*, *Harman v. Gist*, No. 02 C 6112, 2003 WL 22053591, at *4 (N.D. Ill. Sept. 2, 2003) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994)). Further, although the Complaint contains many details about various flooding events, and testimony from some of the Plaintiffs,

Defendants have not met their burden to show that this material should be stricken. *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) ("Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice."). At this stage, the Court cannot say that this material has no possible bearing on the subject matter.

For these reasons, Defendants Cahokia Heights and MESD's Motions to Dismiss (Doc. 60; Doc. 61) are **DENIED**.

**SO ORDERED.**

Dated: November 14, 2022

DAVID W. DUGAN
United States District Judge